# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2005  Decided November 4, 2005
         Reissued December 23, 2005

No. 03-1403

CONSUMERS ENERGY COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

WISCONSIN ELECTRIC POWER COMPANY, ET AL.,
INTERVENORS

———

Consolidated with
04-1252

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Deborah A. Moss* argued the cause and filed the briefs for petitioner.

*Patrick Y. Lee*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

Before: GINSBURG, *Chief Judge*, and TATEL and BROWN, *Circuit Judges*.

Opinion of the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In these consolidated cases, petitioner, a public utility, challenges two Federal Energy Regulatory Commission orders denying reimbursement for certain costs incurred in connection with the establishment of a now-defunct regional transmission organization. Finding FERC's decisions neither arbitrary nor capricious, we deny the petitions for review.

**I.**

In the late 1990s, FERC began encouraging transmission-owning utilities to place their transmission facilities under the control of Regional Transmission Organizations (RTOs). In response, petitioner Consumers Energy Company (CECo), joined several other transmission-owning utilities to develop the Alliance RTO. Although FERC initially approved the Alliance companies' development plan, it eventually rejected the plan, finding that the Alliance RTO lacked sufficient geographic scope to exist as a stand-alone entity. *See Alliance Cos.*, 97 F.E.R.C. ¶ 61,327, 62,529-30 (2001). In that same December 2001 order, FERC found that the public interest would be better served if the Alliance companies placed their transmission facilities under the control of an already existing RTO, the Midwest Independent System Operator (MISO). *See id.* at 62,531. Acknowledging that the Alliance companies had incurred significant expenses in developing the Alliance RTO, FERC stated that it would consider proposals for recovery of all prudently incurred Alliance start-up costs. *See id.* In a later order, issued April 25, 2002, FERC clarified that it would "allow recovery of all costs prudently incurred by any Alliance

GridCo participant to establish an RTO once it is a member of an RTO." *Alliance Cos.*, 99 F.E.R.C. ¶ 61,105, 61,442 (2002). Critical to the issues before us, FERC has interpreted this "April 25 order" as imposing two requirements for recovery of "prudently incurred" Alliance costs: parties seeking reimbursement must have (1) been an Alliance GridCo participant, and (2) joined an RTO.

After FERC announced that Alliance RTO members could recover their costs, CECo sold its transmission facilities to another utility, Michigan Transco. FERC officially authorized that transaction on February 13, 2002*, see Trans-Elect, Inc.*, 98 F.E.R.C. ¶ 61,142 (2002), but the parties subsequently amended the sales contract to account for the later-issued April 25 order. The amended contract provided that only CECo could recover the Alliance RTO costs that it incurred in connection with the transmission facilities, and that if FERC decided to reimburse Michigan Transco instead of CECo, Michigan Transco must remit the recovered funds to CECo. Michigan Transco also agreed to make reasonable efforts to help CECo obtain reimbursement. On May 1, six days after the April 25 order, CECo and Michigan Transco closed the sale. As required by the sales contract, Michigan Transco immediately transferred control of the transmission facilities to MISO.

Setting the stage for the issues now before us, MISO then requested FERC authorization to reimburse CECo approximately $8.3 million for its Alliance-related costs. FERC denied MISO's request, explaining that because CECo had sold its transmission facilities to Michigan Transco, it had never joined an RTO as required for recovery by the April 25 order. FERC also asserted that, through the sale to Michigan Transco, CECo had received adequate compensation for its Alliance development costs. *See Midwest Indep. Transmission Sys. Operator, Inc.*, 103 F.E.R.C. ¶ 61,219, 61,838 (2003) (the

"CECo order"); *Midwest Indep. Transmission Sys. Operator, Inc.*, 104 F.E.R.C. ¶ 61,298, 62,121 (2003) (denying rehearing).

Having failed in its efforts to reimburse CECo directly, MISO asked FERC for permission to give the $8.3 million to Michigan Transco, which had a contractual obligation to pass the money along to CECo. FERC denied MISO's request, explaining that it amounted to a collateral attack on the Commission's earlier order denying MISO's request to reimburse CECo, and in any event, that Michigan Transco was ineligible to recover the costs because it had never been an Alliance participant as required by the April 25 order. *See Midwest Indep. Transmission Sys. Operator, Inc.*, 107 F.E.R.C. ¶ 61,131 (2004) (the "Michigan Transco order"); *Midwest Indep. Transmission Sys. Operator, Inc.*, 108 F.E.R.C. ¶ 61,010 (2004) (denying rehearing).

CECo filed petitions for review of the CECo and the Michigan Transco orders. We consider both petitions in these consolidated proceedings. *See Consumers Energy Co. v. FERC*, No. 04-1252 (D.C. Cir. Aug. 5, 2004).

**II.**

We will set aside FERC's orders only if we find them "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In evaluating FERC's interpretation of its own orders, we afford the Commission substantial deference, upholding the agency's decision "unless its interpretation is plainly erroneous or inconsistent" with the order. *Bluestone Energy Design, Inc. v. FERC*, 74 F.3d 1288, 1292 (D.C. Cir. 1996) (internal quotations omitted); s*ee also CMC Real Estate Corp. v. ICC*, 807 F.2d 1025, 1034 (D.C. Cir. 1986) ("It is well established that an agency's interpretation of the intended effect of its own orders

is controlling unless clearly erroneous.").  Applying this highly deferential standard of review, we consider each order in turn.

*The CECo Order*

Although we agree with CECo that FERC provided no evidence for its assertion that CECo was "adequately compensated" for its Alliance-related costs through the sale of its transmission facilities to Michigan Transco, FERC gave an additional explanation for its decision—that CECo failed to comply with the express terms of the April 25 order—which is both well-reasoned and independent from the compensation rationale.  *See Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970) (stating that the court would not vacate an agency decision "because of errors that are not material").  Recall that the April 25 order states that FERC will "allow recovery of all costs prudently incurred by any Alliance GridCo participant to establish an RTO *once it is a member of an RTO*."  *Alliance Cos.*, 99 F.E.R.C. at 61,442 (emphasis added).  As FERC explained, because CECo had sold its transmission facilities, it had no way of becoming a member of an RTO—a prerequisite for recovery under the April 25 order.

Acknowledging that FERC's decision comports with the April 25 order's plain language, CECo argues that denying recovery "elevates form over substance and is contrary to [FERC's] policy goal."  Petitioner's Br. at 32.  According to CECo, FERC authorized Alliance participants to recover their Alliance costs in order to encourage them to place their transmission systems under MISO's control.  Emphasizing that it did just that by contractually requiring Michigan Transco to transfer control of the transmission facilities to MISO, CECo argues that FERC had no justifiable policy basis for denying reimbursement.  Although we assume that CECo correctly describes FERC's policy objectives and its own advancement of

those objectives, CECo's argument faces an insurmountable obstacle, i.e., nothing in the April 25 order entitles CECo to recover its costs simply because it facilitated the transfer of its transmission facilities to MISO. To the contrary, the April 25 order speaks quite clearly about the conditions for reimbursement, and CECo simply failed to satisfy them. To the extent that CECo believes the April 25 order's requirements are arbitrary and capricious, it should have challenged that order directly. In the case before us, however, CECo challenges only the order denying it recovery.

CECo insists it is "inequitable" for FERC, having never questioned the prudence of CECo's Alliance expenses, to deny it recovery "merely because CECo sold it[s] transmission facilities to Michigan Transco prior to the date that functional control of these transmission facilities was transferred to MISO." Petitioner's Br. at 33. As FERC pointed out in the CECo order, however, "[t]he April 25 Order was issued before [CECo] closed on the deal it proposed . . . . [CECo] nevertheless closed, and also did not seek clarification of the April 25 Order." *Alliance Cos.*, 103 F.E.R.C. at 61,838. CECo argues that because the closing date for the sale was only five days after FERC issued the April 25 order, any request for clarification would have been futile because FERC would have had insufficient time to answer before the sale was completed. But again, FERC has a persuasive answer: CECo provides no explanation for why "the closing date could not have been extended for some period while clarification was sought, or that CECo could not have requested an expedited FERC ruling to meet the scheduled closing date." Reply Br. at 24.

Finally, CECo insists it had no need to seek clarification because, according to the company, the April 25 order cannot reasonably be read to preclude recovery by both CECo *and* Michigan Transco. As CECo sees it, the order introduced

ambiguity only as to which company—CECo or Michigan Transco—could, following the sale, recover CECo's start-up costs, an ambiguity the company says it addressed by amending the contract to require Michigan Transco to remit to CECo any costs recovered on CECo's behalf. But again, the April 25 order's plain language precludes this argument. Not only does that order disqualify CECo from recovering its Alliance costs (because CECo never became an RTO member) but nothing in the order even hints that it may nevertheless recover those costs simply because the company to which it sold its transmission facilities (Michigan Transco) likewise failed to satisfy one of the order's requirements—though, as we shall explain below, a different requirement than the one that doomed CECo's recovery effort. CECo wrongly assumed that the April 25 order means something other than what it says—a mistake for which it has no one to blame but itself.

*The Michigan Transco Order*

Before addressing the merits of CECo's challenge to the Michigan Transco order, we must consider FERC's argument that CECo lacks standing to challenge that order. To meet the constitutional requirements for standing, a plaintiff must show "an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

FERC argues that because the Michigan Transco order rejected payment to Michigan Transco, the purported injury was to Michigan Transco, not CECo, and that only Michigan Transco would receive any redress were we to order FERC to reconsider its decision. CECo responds that Michigan Transco has a contractual obligation to remit to it any Alliance RTO start-up costs it recovers, and that this contractual relationship sufficiently connects CECo's injury and redress to FERC's

order. We agree with CECo. The company altered its contract with Michigan Transco to ensure that were CECo unable to recover its Alliance costs on its own, it could do so through Michigan Transco, and Michigan Transco pursued reimbursement on CECo's behalf only because the contract required it to do so. CECo therefore has a "concrete personal stake" in the issue before us. *APPC Servs., Inc. v. Spring Commc'ns*, 418 F.3d 1238, 1242 (D.C. Cir. 2005). Although FERC points out that Michigan Transco could breach its contractual duty to remit any recovered costs to CECo, we think that possibility far too speculative to sever the connection between FERC's order and CECo's injury and redress. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that for Article III standing purposes, it need only be "likely" that a favorable court decision will redress the plaintiff's injury).

On the merits, FERC gave two reasons for rejecting MISO's request to reimburse Michigan Transco. First, it ruled that the request amounted to a collateral attack on the earlier order denying CECo's reimbursement petition. According to FERC, because Michigan Transco would remit any recovered costs to CECo, MISO's request to reimburse Michigan Transco involved the same question as the earlier order, i.e., whether CECo was eligible to recover its Alliance costs. Setting aside that this argument conflicts with FERC's insistence that CECo lacks standing—Michigan Transco is either likely to remit any recovered funds to CECo or it's not—we see no merit in the Commission's argument. FERC denied MISO's request to reimburse CECo because the company failed the April 25 order's second recovery condition (membership in an RTO), whereas Michigan Transco's eligibility turns on the order's first condition (participation in Alliance RTO development efforts). Accordingly, the request to reimburse Michigan Transco does not "present[ ] the same issue" that the Commission resolved in

denying recovery to CECo. *Midwest Indep. Transmission Sys. Operator, Inc.*, 107 F.E.R.C. at 61,438.

Fortunately for FERC, the order includes a second, independent, and completely persuasive rationale for denying Michigan Transco's reimbursement request: that because Michigan Transco had in fact never been a member of the Alliance RTO, it failed to satisfy the April 25 order's first condition, which limits recovery of costs to those "incurred by any Alliance GridCo participant." *Alliance Cos.*, 99 F.E.R.C. at 61,442. CECo's effort to avoid the consequences of the order's plain language—it argues that by effectuating the transfer of its transmission facilities to MISO, it accomplished FERC's policy goals—fails for the reasons given above.

## III.

In sum, FERC provided a satisfactory explanation for denying CECo and Michigan Transco reimbursement for CECo's Alliance costs. Simply put, neither company met the conditions for reimbursement set forth in the April 25 order. To be sure, this means CECo will be unable to recover its prudently incurred Alliance costs. But that loss flows not from any arbitrary action by FERC, but rather from CECo's failure to challenge the April 25 order and its decision to consummate the sale to Michigan Transco notwithstanding the April 25 order's unambiguous statement that only those transmission owners which were Alliance participants and that are now RTO members may recover their Alliance costs. Michigan Transco cannot satisfy the order's first requirement (participation in Alliance RTO efforts) and CECo, which had been an Alliance participant, cannot satisfy the second (RTO membership) because it sold its transmission facilities to Michigan Transco

prior to transferring them to MISO.  We deny the petitions for review.

*So ordered.*