# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

—————

Argued October 13, 2011      Decided January 17, 2012

No. 10-1313

INDIANA UTILITY REGULATORY COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AMERICAN PUBLIC POWER ASSOCIATION, ET AL.,
INTERVENORS

—————

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

—————

*Eric A. Eisen* argued the cause and filed the briefs for petitioner.

*Steven J. Ross* and *Steven T. Nourse* were on the brief for intervenor American Electric Power Service Corporation in support of petitioner. *Randolph L. Elliott* entered an appearance.

*Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief was *Robert H. Solomon*, Solicitor.

*Barry S. Spector* and *Paul M. Flynn* were on the brief for intervenor PJM Interconnection, L.L.C. in support of respondent. *Robert A. Weishaar Jr.* entered an appearance.

Before: GINSBURG,[*] HENDERSON, and KAVANAUGH, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The Indiana Utility Regulatory Commission petitions for review of an order of the Federal Energy Regulatory Commission approving the tariff of PJM Interconnection, L.L.C.. We dismiss the petition insofar as it challenges the order on grounds the IURC did not raise with sufficient specificity in its request for rehearing by the Commission, 16 U.S.C. § 825*l*(b). In all other respects, we deny the petition because the IURC has not shown the Commission acted unreasonably.

## I. Background

Advancements in metering technology now enable retail customers to reduce their usage of electricity in response to short-term fluctuations in demand and price. This so-called "demand response" in effect returns energy to the market when it is most needed, thereby reducing the volatility of electricity prices and minimizing the likelihood of a

---

[*] As of the date the opinion was published, Judge Ginsburg had taken senior status.

shortage.[*]  In recognition of these benefits the Congress in 2005 declared it is "the policy of the United States that time-based pricing and other forms of demand response ... shall be encouraged ... and unnecessary barriers to demand response participation in energy, capacity and ancillary service markets shall be eliminated." 16 U.S.C. § 2642 note.

The Federal Energy Regulatory Commission has implemented this policy in part through its Order 719, which requires operators of wholesale electricity markets to allow trading in retail as well as wholesale demand response. *See Wholesale Competition in Regions with Organized Electric Markets*, 73 Fed. Reg. 64,100-01 (Oct. 28, 2008) (codified as amended at 18 C.F.R. § 35.28). Specifically, the Commission required the operators to grant access to third-party "aggregators of retail customers" (ARCs), except where "the laws or regulations of the relevant electric retail regulatory authority do not permit the customers aggregated [by the ARC] to participate," Order 719, ¶ 155.[*]  The Commission said it included this exception in order to be clear that its "intent was not to interfere with the operation of successful [retail] demand response programs, [to] place an undue burden on state and local retail regulatory entities, or to raise new concerns regarding federal and state jurisdiction." *Id.*; *see also* 16 U.S.C. § 824(b) (preserving states' jurisdiction to regulate "facilities used in local distribution"). The Commission further stated it would not "require a [state

---

[*] Depending upon context, "demand response" may refer either to the practice of reducing energy usage in response to price, or to the amount by which the customer reduces its demand, or to a third party's sale of that energy in an organized market.

[*] Henceforth we refer to the "relevant electric retail regulatory authority" as the "state regulator."

regulator] to make any showing or take any action in compliance with [Order 719]," nor place the operator of a wholesale market "in the position of interpreting the laws or regulations" of any state. Order 719, ¶¶ 155, 158(g) n.212. Other than exempting the state regulator and the operators of wholesale markets from the obligation to verify retail customers' eligibility to sell demand response, the Commission did not specify how or by whom that task was to be performed.

The petition for review now before us arises from a dispute between the Indiana Utility Regulatory Commission (IURC) and PJM Interconnection, L.L.C., which, subject to the Commission's oversight, operates the market for wholesale electricity in the District of Columbia and all or parts of 13 states, including Indiana. *See* 101 FERC P 61,345 (2002) (authorizing PJM to serve as a regional transmission organization); *Illinois Commerce Comm'n v. FERC*, 576 F.3d 470, 473 (7th Cir. 2009) (explaining role of such organizations in general and of PJM in particular). *See generally Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities*, Order No. 888, 61 Fed. Reg. 21540 (1996) (creating regional electricity markets organized under open-access tariffs). Over 500 market buyers, sellers and traders of electricity participate in PJM's market. FERC, Electric Power Markets: PJM, http://www.ferc.gov/market-oversight/mkt-electric/pjm.asp (last visited Dec. 26, 2011).

In 2009, PJM filed with the Commission a revised tariff implementing the changes required of it by Order 719. Section 1.5A.1 of the revised tariff permits a member of PJM to act as an ARC on behalf of "multiple individual end-use customer[s]" for the purpose of selling demand response "unless the [state regulator] prohibit[s] their participation." Section 1.5A.3 provides that after it has accepted an ARC's

application, PJM will "notify the appropriate electric distribution company or Load Serving Entity" for each customer the ARC represents, and that company, typically a retail utility, will have ten business days to object on the ground the customer is not eligible under state law to sell its demand response. If the retail utility fails to raise a timely challenge, or if it fails to produce sufficient documentary evidence the customer is ineligible to sell its demand response, then PJM will "assume" state law does not prohibit the customer's participation. The tariff thus requires the retail utility to determine whether a customer is eligible and, if it is not, then to compile documentary evidence substantiating its objection.

In response to the revision of PJM's tariff, the IURC issued an order enjoining retail customers in Indiana from selling demand response in the wholesale market without the IURC's prior approval. *See* Order on Requests for Interim Relief, IURC Cause No. 43566 (Feb. 25, 2009). The IURC reasoned the injunction was necessary because retail customers in Indiana obtain electricity through a traditionally regulated monopoly utility, Indiana Michigan Power (I&M), and allowing retail customers to aggregate demand response for sale through PJM "would at least partially bypass" the IURC's oversight of the retail market. *Id.* Noting the complexity of the "relationship of demand response with integrated resource planning and other aspects of state ratemaking," the IURC required that "the status quo be maintained" pending its further investigation. *Id.*

The IURC then filed with the Commission a Notice of Intervention and Protest regarding PJM's tariff and attached a copy of its own order. The IURC alleged the Commission would "step over the line drawn by the Federal Power Act" between federal and state jurisdiction if it approved the new provisions, which "directly interfere with the regulatory

authority of the IURC." The IURC also challenged the requirement that a retail utility "object and prove" a particular customer of an ARC is ineligible to participate in the ARC's offer to sell demand response. PJM answered the protest, defending its tariff as "just and reasonable" and consistent with Order 719.

The Commission conditionally accepted PJM's proposed tariff revisions. 128 FERC P 61,238 (2009). The Commission held PJM's tariff did not encroach upon the IURC's jurisdiction but it nonetheless required PJM to make certain revisions to recognize that some states may require a retail customer to obtain regulatory approval before allowing an ARC to sell its demand response in the wholesale market. The Commission also accepted the provision imposing upon the retail utility the burden to "object and prove" a particular customer is ineligible to sell demand response because Order 719 had afforded PJM "substantial flexibility to develop procedures with respect to this issue."

After the Commission had denied its petition for clarification and rehearing, the IURC petitioned this court for review. Because the Commission contends certain of the IURC's arguments are not properly before us, we first address the matter of our jurisdiction, mindful of the strict limitation imposed by Section 313 of the Federal Power Act, 16 U.S.C. § 825*l*.

## II. Jurisdiction

The IURC's primary argument is that the revisions to PJM's tariff, if approved, would "encroach on Indiana state jurisdictional authority," in violation of Section 201 of the Federal Power Act, 16 U.S.C. § 824. First, by "presuming" every customer is eligible to sell demand response, the tariff allegedly "creat[es] an irreconcilable conflict with an Indiana Commission order that requires precisely the opposite";

second, by "burdening" Indiana's monopoly utility (I&M) with the task of objecting to the participation of each individual customer, the tariff "impermissibly cross[es] the state-federal jurisdictional line." The Commission responds that the IURC did not preserve these arguments for our review because the IURC did not raise them with specificity in its request for rehearing. We agree.

Section 313 of the Federal Power Act limits our review to objections that were "urged before the Commission in [an] application for rehearing[,] unless there is reasonable ground for [the petitioner's] failure so to do." 16 U.S.C. § 825*l*(b). Additionally, because an application for rehearing must "set forth specifically the ground or grounds upon which such application is based," 16 U.S.C. § 825*l*(a), our jurisdiction is limited by the extent to which a petitioner objected "with specificity," *Allegheny Power v. FERC*, 437 F.3d 1215, 1220 (D.C. Cir. 2006).

In its brief the IURC objects to "the presumption and objection burden placed on the state jurisdictional retail utilities," but in the IURC's request for rehearing we find only this single statement alluding to a jurisdictional objection:

> The IURC has argued and continues to assert that having the retail utility bear this certification requirement is an impingement on the IURC's jurisdictional authority over the retail utility.

For openers, we note this statement makes no reference to the allegedly unlawful "presumption of eligibility"; clearly, we cannot consider the IURC's after-thought challenge to the presumption.

Whether the IURC preserved its jurisdictional challenge to the "objection burden" is an only slightly more difficult question. The IURC mentioned the issue in its request for rehearing, but it did so by "referring only in a general way" to an argument it had made in other filings; that is not sufficient. *Conn. Dep't of Pub. Util. Control v. FERC*, 593 F.3d 30, 36 (D.C. Cir. 2010). *See also Pub. Serv. Elec. & Gas Co. v. FERC*, 485 F.3d 1164, 1170 (D.C. Cir. 2007) (request for rehearing had "merely noted the alleged error in a single opaque sentence"); *Allegheny*, 437 F.3d at 1220 (request for rehearing had raised objection only "indirectly" by referring to previous arguments). Indeed, at oral argument the IURC conceded it was perhaps not "as articulate as one would wish to be" in a request for rehearing. The IURC nevertheless asks us to cut it some slack because the Commission was "not unaware that it was navigating a jurisdictional border" when it issued Order 719, and in fact was "specifically made aware" of the IURC's objections in filings made prior to its request for rehearing.

We must, of course, decline any invitation to exceed the jurisdiction conferred upon the court by statute; here, the relevant constraint limits our review to the grounds for objection "set forth specifically" in the petitioner's request for Commission rehearing. 16 U.S.C. § 825*l*(a). It therefore matters not what the Commission knew or should have known at the time. In this regard the jurisdictional provisions of the Federal Power Act "differ[] fundamentally" from "routine judicial-review statutes" under which we might excuse a petitioner's failure to exhaust a claim when an agency has considered the argument at the urging of another party. *ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 n.7 (D.C. Cir. 1985); *accord Pub. Serv. Co. of N. M. v. FERC*, 863 F.2d 1021, 1022 (D.C. Cir. 1988) (Ginsburg, J., concurring in denial of rehearing en banc) (jurisdictional requirement in

Natural Gas and Federal Power Acts is not a "mere restatement of the judicial exhaustion requirement, subject to the same exceptions"). *Compare CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 117 (D.C. Cir. 2006), *with Save Our Sebasticook v. FERC*, 431 F.3d 379, 381-82 (D.C. Cir. 2005).

With our purview limited to the four corners of the IURC's request for rehearing, we conclude the IURC has not satisfied the requirements of Section 313 with respect to either of its contentions regarding the division between federal and state jurisdiction. *See Pub. Serv. Elec. & Gas Co.*, 485 F.3d at 1170 (dismissing statutory claim raised in petitioner's brief where request for rehearing had "made no argument to substantiate the allegation of error, never confronted the language of [the statute], offered no analysis, and cited no legal authority"). We therefore dismiss the IURC's petition insofar as it argues the Commission encroached upon the state's jurisdiction.

### III. The Merits

Turning to the portion of the petition properly before us, we can see readily that we must uphold the Commission's order approving the disputed tariff. Our review of this matter is deferential: We will not set aside an order of the Commission unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *accord Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1368 (D.C. Cir. 2004). Furthermore we afford substantial deference to the Commission's interpretation of Order 719 as it applies to PJM's tariff. *See Consumers Energy Co. v. FERC*, 428 F.3d 1065, 1067-68 (D.C. Cir. 2005) ("In evaluating FERC's interpretation of its own orders, we afford the Commission substantial deference, upholding the agency's decision unless its interpretation is plainly erroneous or inconsistent with the

order" (internal quotation marks omitted)). The Commission's order plainly satisfies our standard of review.[*]

As recounted above, the Commission approved PJM's allocating to the retail utility the burdens of objection and proof as an exercise of the "substantial flexibility" afforded PJM under Order 719. In its request for rehearing the IURC maintained "the certification requirement should be placed on the ARC" rather than the retail utility for the "additional reason" that such a rule would reduce "regulatory uncertainty." According to the IURC, requiring the ARC to confirm a customer's eligibility to sell demand response would "assure the ARC is aware of and provides information to" retail customers about a state's "customer eligibility requirements," thereby reducing the "likelihood of confusion, miscommunication, and frustration that can thwart an end-use customer's ability and motivation to participate in demand response."

On rehearing the Commission again expressly rejected the IURC's proposal, reiterating that "in Order No. 719, the Commission granted [PJM] substantial flexibility to develop procedures with respect to this issue." *Order on Rehearing, Clarification, and Compliance*, 131 FERC P 61,069, ¶ 10 (Apr. 23, 2010). The Commission found the IURC's proposal "would require the implementation of a new, parallel process that could confuse, complicate, or delay" the participation of retail customers. *Id.* ¶ 11.

---

[*] Consequently, we do not address whether, as the Commission contends, a still more deferential standard of review is appropriate under our precedents. *Cf. Alcoa Inc. v. FERC*, 564 F.3d 1342, 1347 (D.C. Cir. 2009) (applying "highly deferential" standard of review to Commission's ruling on a rate making).

We hold the Commission adequately addressed the IURC's proposal and sufficiently explained its reasons for rejecting it. As PJM acknowledges in its brief in support of the Commission:

> Ultimately, a case probably could be made for having *either* the aggregator *or* the distributor perform the essentially ministerial task of checking the eligibility status of a customer that has asked to register [as an offeror of demand response] with PJM. But that underscores that the FERC's action was reasonable.

We endorse this summary view; it has the virtues of being both modest and correct.[*]

\*\*\*

For the foregoing reasons, we dismiss the petition insofar as it raises jurisdictional arguments under Section 201 of the Federal Power Act, 16 U.S.C. § 824, and we deny the petition in all other respects.

*So ordered.*

---

[*] We do not address the claims of the intervenor American Electric Power Service Corporation (AEP), the parent company of I&M, because AEP did not seek Commission rehearing of the claims in its brief and, as we hold in Parts II and III, the IURC preserved for review only its argument about regulatory uncertainty. *See California Dep't of Water Resources v. FERC*, 306 F.3d 1121, 1126 (D.C. Cir. 2002).