# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 30, 2022        Decided September 16, 2022

No. 20-1256

UNITED POWER, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

LA PLATA ELECTRIC ASSOCIATION, INC., ET AL.,
INTERVENORS

---

Consolidated with 20-1502

---

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

---

*Charles A. Patrizia* argued the cause and filed the briefs for petitioner.

*Matthew J. Glover*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and

*Robert H. Solomon*, Solicitor. *Anand Viswanathan*, Attorney, entered an appearance.

*Simon A. Steel* argued the cause for respondent-intervenors Tri-State Generation and Transmission Association, Inc., et al. With him on the brief were *Clinton A. Vince, Jason T. Gray,* and *Richard M. Lorenzo. Kathleen L. Mazure* entered an appearance.

Before: TATEL[*] and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: Tri-State Generation and Transmission Association, Inc., a generation and transmission cooperative, admitted Mieco, Inc., a natural gas supplier, as a member. The Federal Energy Regulatory Commission concluded that owing to the admission of Mieco (1) Tri-State was subject to its jurisdiction and (2) the Commission has exclusive jurisdiction over the exit charge levied by Tri-State upon a member that leaves the cooperative. United Power, Inc., a utility and member of Tri-State, opposed the admission of Mieco and wants United's exit charge adjudicated in a state forum.

In these consolidated petitions for review, United challenges the FERC's conclusions as *ultra vires* and arbitrary and capricious. We dismiss the petitions for review insofar as they raise objections that have not properly been exhausted

---

[*] Judge Tatel assumed senior status after this case was argued and before the date of this opinion.

before the agency, and we deny the petitions in all other respects.

## I.    Background

Under the Federal Power Act (FPA), 16 U.S.C. § 791a *et seq.*, the FERC is authorized to regulate "the transmission of electric energy" and "the sale of electric energy at wholesale" in interstate commerce.   16 U.S.C. § 824(b)(1).   The FPA requires that "[a]ll rates and charges made, demanded, or received by any public utility for or in connection with the transmission or [jurisdictional] sale of electric energy" be "just and reasonable."   *Id.* § 824d(a).   The same goes for "rules and regulations affecting or pertaining to such rates or charges."   *Id.* The Act also provides that "any such rate or charge that is not just and reasonable" is unlawful.   *Id.*

Therefore, if the FERC "find[s] that any rate, charge, or classification . . . is unjust [or] unreasonable," then it "shall determine the just and reasonable rate, charge, classification" and "fix the same by order."   *Id.* § 824e(a).   Again, the same applies to "any rule, regulation, practice, or contract affecting [a] rate, charge, or classification."   *Id.*   In short, the FERC is responsible for regulating not only wholesale rates but also "the panoply of rules and practices affecting them."   *FERC v. Electric Power Supply Ass'n*, 577 U.S. 260, 277 (2016).

Not every entity that sells electric energy at wholesale in interstate commerce is subject to the jurisdiction of the FERC. Excluded are "a State or any political subdivision of a State," certain electric cooperatives, and "any corporation which is wholly owned" by those entities.  16 U.S.C. § 824(f).

Respondent-Intervenor    Tri-State    Generation    and Transmission Association, Inc.    is    a    generation    and

transmission cooperative based in Colorado. Tri-State provides electricity at wholesale to more than 40 utilities in four states. The Utility Members resell the electricity to local end-users. None of those utilities is subject to the jurisdiction of the FERC; the great majority are cooperatives exempted by the Act, and the rest are political subdivisions of states. When a Utility Member buys electricity from a cooperative such as Tri-State, it earns an ownership interest, known as patronage capital, in the cooperative. According to Tri-State, "cooperative members acquire patronage capital through transactions that they make with the cooperative that benefit the cooperative financially."

Each Utility Member entered into a long-term requirements contract, known as a Wholesale Electric Service Contract (WESC), with Tri-State. By pledging those WESCs, Tri-State earns revenue to finance its generation and transmission facilities. Under the bylaws of the cooperative, a member that wishes to leave the cooperative and thereby be released from its contractual obligation to purchase energy must pay "an exit charge to compensate Tri-State and the remaining Members for the loss of the long-term revenue stream the withdrawing Member had committed to contribute." *Tri-State Generation and Transmission Ass'n, Inc.*, 170 FERC ¶ 61,224, ¶ 5 (Mar. 20, 2020) (Declaratory Order).

For more than 60 years, Tri-State had been wholly owned by non-jurisdictional entities and therefore exempt from the jurisdiction of the FERC. In September 2019, after the cooperative's bylaws were amended to allow new classes of membership, Tri-State admitted its first non-utility member: Mieco, Inc., a supplier of natural gas. Mieco is not in any category the FPA exempts from the jurisdiction of the FERC. In contrast to the Utility Members, Mieco earns patronage

capital not by buying electricity from Tri-State above cost but by selling natural gas to the cooperative below cost.

Both the Petitioner, United, and La Plata Electric Association, Inc., an Intervenor-Petitioner, are Utility Members of Tri-State that voted against admitting Mieco as a member of the cooperative. A few months after Mieco was admitted, they filed complaints with the Colorado Public Utilities Commission, seeking to compel Tri-State to set reasonable exit charges for them. Tri-State then petitioned the FERC for issuance of a declaratory order, *see* 18 C.F.R. § 385.207(a)(2), stating that (1) Tri-State was now subject to the FERC's jurisdiction because it was no longer "wholly owned" by non-jurisdictional entities, and (2) the FERC has exclusive jurisdiction over any exit charge levied by Tri-State against a member that leaves the cooperative. Protestors argued, among other things, that the FERC should not assert jurisdiction over Tri-State as long as there were unresolved state law questions regarding the lawfulness of Mieco membership in Tri-State.

On March 20, 2020 the FERC granted in part and denied in part Tri-State's petition. *Declaratory Order*, 170 FERC at ¶ 61,224. Despite the open state law questions, the FERC concluded that Tri-State was no longer "wholly owned" by non-jurisdictional entities and was therefore subject to the jurisdiction of the Commission. The FERC further concluded that its jurisdiction over an exit charge is concurrent with that of state authorities, such as the Colorado PUC; therefore, the proceedings before the Colorado authorities were not automatically preempted. *Id.* at ¶ 121.

After the parties' request for rehearing was deemed denied by virtue of the FERC's inaction, *see Allegheny Defense Project v. FERC*, 964 F.3d 1, 19 (D.C. Cir. 2020), United

petitioned this court for review of the Declaratory Order. As permitted by Section 313(a) of the FPA, 16 U.S.C. § 825*l*(a), the FERC subsequently issued an order setting aside the Declaratory Order in part. *Tri-State Generation and Transmission Ass'n, Inc.*, 172 FERC ¶ 61,173 (Aug. 28, 2020) (First Rehearing Order). The FERC reaffirmed its jurisdiction over Tri-State but, in contrast to the Declaratory Order, concluded that it has exclusive jurisdiction over an exit charge as a rate or charge for a jurisdictional service.

United and La Plata requested rehearing of the exit charge issue. The FERC denied the request. *Tri-State Generation and Transmission Ass'n, Inc.*, 173 FERC ¶ 61,097 (Oct. 28, 2020) (Second Rehearing Order).

United then petitioned this court for review of the Rehearing Orders, and that petition was consolidated with its earlier petition for review of the Declaratory Order. La Plata and the Colorado PUC have intervened in support of the petitioner; Tri-State and two Utility Members (Wheat Belt Public Power District and Northwest Rural Public Power District) have intervened in support of the FERC.

## II. Analysis

Recall the FERC determined that admitting Mieco as a member brought Tri-State within its jurisdiction and that it has exclusive jurisdiction over the exit charge Tri-State levies upon any member that leaves the cooperative. United challenges both these determinations on various grounds.

**A. Challenges to the Assertion of Jurisdiction Over Tri-State**

The FERC concluded that because Tri-State is no longer wholly owned by non-jurisdictional entities, it is subject to the Commission's jurisdiction. This it did despite the unresolved state law questions regarding the validity of Mieco's membership. Citing *Michigan v. EPA*, 268 F.3d 1075, 1084 (D.C. Cir. 2001), United contends the Commission exceeded its statutory authority by asserting jurisdiction over Tri-State before it was established that Mieco could lawfully be a member of the cooperative under state law.

As the FERC correctly points out, however, United did not exhaust this argument before the Commission, so we have no authority to consider it. 16 U.S.C. § 825*l*(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."). An application for rehearing, moreover, must "set forth specifically the ground or grounds upon which such application is based." *Id.* § 825*l*(a). We therefore have no jurisdiction over an objection the petitioner fails to raise with specificity. *Indiana Util. Regul. Comm'n v. FERC*, 668 F.3d 735, 738–39 (D.C. Cir. 2012). Because we construe these statutory limitations upon our jurisdiction strictly, *see Kelley v. FERC,* 96 F.3d 1482, 1487 (D.C. Cir. 1996), a "single opaque sentence" does not suffice, *Public Serv. Elec. & Gas Co. v. FERC*, 485 F.3d 1164, 1170 (D.C. Cir. 2007), nor does raising a particular argument only "in a general way." *Conn. Dep't of Pub. Util. Control v. FERC*, 593 F.3d 30, 36 (D.C. Cir. 2010).

The closest United came to raising this argument before the FERC is in a footnote to the Introduction in its first Request for Rehearing:

> United Power notes that the Commission recognized that there are significant state law issues related to the purported admission of Mieco to membership, and that those issues are before the Colorado Public Utility Commission, which is better suited to determine the state law issues. The [FERC]'s determination of Tri-State's jurisdictional status while the state law issues remain to be fully determined by the better-qualified state utility commission is premature as well as inefficient, given the Commission's specific recognition that its jurisdictional decision might require reconsideration in the event a Colorado tribunal concluded the Mieco transaction was invalid. Under such circumstances, at a minimum, the Commission should have concluded that Tri-State was exempt from the Commission's jurisdiction until a Colorado tribunal determined the addition of Mieco was legally valid.

That will not do. United did not describe the FERC's action as "ultra vires" or "beyond the agency's statutory authority," as it now argues, but as "premature" and "inefficient." The adjective "premature," though not inconsistent with an ultra vires argument, is just as consistent with an argument about the unreasonable exercise of agency discretion. And "inefficient," the other adjective used to describe the FERC's action, certainly connotes the latter type of argument. Neither did United's description of what the FERC should have done —

wait for a state tribunal to resolve the state law issues — suggest an ultra vires challenge rather than a challenge to the way in which the FERC exercised its discretion. If the specificity requirement means anything, it means that we will not "espy [a] specific [ultra vires] objection from such vague and formless assertions." *Shafer & Freeman Lakes Env't Conservation Corp. v. FERC*, 992 F.3d 1071, 1089 (D.C. Cir. 2021).

Another of United's arguments faces the same jurisdictional bar. United contends the FERC's assertion of jurisdiction was arbitrary and capricious because it was based upon an erroneous understanding of cooperative ownership. As the FERC points out, however, United never raised this argument even generally, let alone with "specificity."

United also argues that it was arbitrary and capricious for the FERC to assert jurisdiction before resolution of state law questions about Mieco's ownership. Moreover, United asserts, the FERC's explanation of its action is unreasonable and insufficient. At the threshold, the FERC argues that this argument, too, was not properly exhausted.

We disagree. After describing the FERC's assertion of jurisdiction as "premature" and "inefficient," the footnote cited above went on to say that "at a minimum, the Commission should have concluded that Tri-State was exempt from the Commission's jurisdiction until a Colorado tribunal determined the addition of Mieco was legally valid." The adjectives used to describe what the FERC did ("premature" and "inefficient") and the description of what the FERC ought to have done (wait for resolution by a state tribunal) are specific enough for us to make out an arbitrary and capricious argument without squinting.

Because United properly exhausted this argument, we turn to its merits.  As framed by United in its brief, the argument "necessarily assumes . . . that FERC's assertion of jurisdiction was not ultra vires."  In other words, it assumes that the FERC is statutorily authorized to make a jurisdictional determination while potentially dispositive state law questions remain unresolved, but that FERC acted unreasonably in doing so.  For its part, the Commission contends it acted well within its broad discretion to manage its docket as it sees fit and to decide issues presented to it.

Just so.  "An agency has broad discretion to determine when and how to hear and decide the matters that come before it." *Tennessee Valley Mun. Gas Ass'n v. FERC*, 140 F.3d 1085, 1088 (D.C. Cir. 1998).  Under the Commission's Rules of Practice and Procedure, the agency may issue a declaratory order "to terminate controversy or remove uncertainty," 18 C.F.R. § 355.207(a)(2).  As with other agencies, use of this tool is committed to the FERC's "sound discretion."  5 U.S.C. § 554(e).  The FERC explained in its Declaratory Order that it acted while proceedings were ongoing at the Colorado public utility commission because "the [FERC] has a statutory obligation to act on [rate filings submitted by Tri-State], and . . . action on the Petition [would] provide needed clarity to all parties involved in these proceedings."  170 FERC ¶ 61,224, ¶ 74.  Especially with Section 205 rate filings pending before the agency, it was reasonable for it to decide the issues presented and to leave resolution of state law issues for a state tribunal.  It matters not that the FERC might have to revisit its determination at some later, indefinite time.  Providing even temporary clarity to the parties is useful, and it was reasonable for the FERC to conclude that providing such clarity was a prudent and efficient use of a declaratory order.

## B. The Exit Charge Determination

In the Declaratory Order, the FERC determined that an exit charge levied by Tri-State against a withdrawing member is within its jurisdiction as "a rule or practice directly affecting Tri-State's jurisdictional wholesale rates." 170 FERC ¶ 61,224 at ¶ 119. Noting, however, that no federal court has stated that the Commission's "directly affecting" jurisdiction is exclusive, the FERC concluded its jurisdiction over the exit charge is concurrent with that of state authorities. Thus, state proceedings were not automatically preempted. *Id.* at ¶ 121.

In the First Rehearing Order, the Commission set aside that determination and concluded instead that it has exclusive jurisdiction over an exit charge, because it is considered a rate or charge for a jurisdictional service. Per the agency's updated reasoning:

> The payment of an exit charge upon termination of the contract affects the timing of Tri-State's recovery of the costs[] but does not change the nature of the charge as a jurisdictional rate paid by the member to Tri-State to cover the costs that Tri-State incurred to provide full requirements service to the member.

172 FERC ¶ 61,173 at ¶ 32.

In the Second Rehearing Order, the Commission stuck with its conclusion that it has exclusive jurisdiction over an exit charge, but arguably tweaked the rationale. The FERC now explained that "Section 205(a) refers to 'all rates and charges made, demanded, or received by any public utility *for or in connection with* the transmission or sale of electric energy subject to the jurisdiction of the Commission'" and "Tri-State's

exit charge falls within this provision." 173 FERC ¶ 61,097 at ¶ 5 (quoting 16 U.S.C. § 824d(a) (emphasis added)). By emphasizing the words "for or in connection with," the Commission appears to have retreated from its earlier, unequivocal characterization of the exit charge as the functional equivalent of a charge for a jurisdictional service.

United argues that an exit charge is not a rate "for" a jurisdictional service because it is "payment made to avoid purchasing [the] service." Nor is the exit charge a rate charged "in connection with" the transmission or sale of electric energy, says United. An exit charge is paid to avoid purchasing electricity, so it is made not in connection with the sale of electricity, but in connection with the non-sale of electricity. Continuing, United argues an exit charge is at most a rule or regulation or contract "directly affecting" wholesale or transmission prices, over which the FERC does not have exclusive jurisdiction.

It is a stretch, we think, for the Commission to say an exit charge is a rate or charge for a jurisdictional service. That both the rate charged for electricity under a WESC and an exit charge help a cooperative recover similar costs is insufficient to make it the functional equivalent of a rate charged for a jurisdictional service.

We do, however, find the FERC's description of an exit charge to be a persuasive explanation of why an exit charge is made "in connection with the . . . sale of electric energy." An exit charge, which protects members of a cooperative against rate increases caused by the exit of a member, while also increasing membership commitment and stability, is an important part of the integrated bargain to which a firm agrees when it becomes part of a generation and transmission cooperative. If there were no obligation to pay an equitable

exit charge "to cover the costs that [a cooperative] incur[s] to provide full requirements service to the member," 172 FERC ¶ 61,173 at ¶ 32, then the cost of electricity under the requirements contract surely would be higher. Therefore, we agree that an exit charge is a rate charged "in connection with" the provision of wholesale electricity.

Having determined that an exit charge is a charge made "in connection with the . . . sale of electric energy," we have no trouble concluding that the FERC was correct that its jurisdiction over an exit charge is exclusive. The FPA "allocates to FERC exclusive jurisdiction over 'rates and charges . . . received . . . for or in connection with' interstate wholesale sales." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (2016) (quoting 16 U.S.C. § 824d(a)). Just as the FERC "has exclusive authority to determine the reasonableness of wholesale rates," *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 371 (1988), so does the FERC have exclusive authority to determine the reasonableness of an exit charge.[*]

United devotes much of its brief to the Supreme Court's preemption jurisprudence and how the distinction between conflict preemption and field preemption makes a difference here. That discussion obscures far more than it illuminates. As we have explained, the FERC has exclusive jurisdiction over an exit charge. A state proceeding adjudicating whether an exit charge is just and reasonable is therefore preempted because it is "unmistakably and unambiguously directed" at something

---

[*] Because we decide the case on this ground, we have no occasion to consider Respondent-Intervenors' intriguing textual argument that even the FERC's "directly affecting" jurisdiction is exclusive.

that is in "the [FERC's] exclusive domain." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 386 (2015) (cleaned up).

## III.    Conclusion

For the foregoing reasons, we dismiss the petitions for review insofar as they raise arguments not presented to the agency, and we deny them in all other respects.

*So ordered.*